UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RODRIC JUAVON SHORTS

VERSUS

ST. CHARLES PARISH SHERIFF'S OFFICE,
ET AL.

CIVIL ACTION

NO. 24-2759-EJD

**ORDER AND REASONS**

Plaintiff, Rodric Juavon Shorts, a former state prisoner, filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 alleging claims arising from his arrest on December 12, 2023.[1] In a prior ruling, the Court allowed the individual-capacity claims of excessive force against Defendants Detective Paul Quick, Detective Harold Kingsmill, Detective Kenny Latour, Detective Allan Tabora, Detective Barrett Pearse, Detective Philip Ibbitson, and Detective Christopher Waguespack to proceed and dismissed all other claims.[2] Defendants filed a motion for summary judgment.[3] Shorts did not file a response to the motion despite being ordered to do so.[4]

Having considered the record and the applicable law, the motion for summary judgment is granted for the following reasons.

I.      **Background**

At approximately 11:45 a.m. on December 12, 2023, police arrived at a residential area of New Sarpy, Louisiana to execute a search warrant.[5]  Shorts was

---

[1] R. Doc. 4.
[2] R. Doc. 20.
[3] R. Doc. 46.
[4] *See* R. Doc. 48.
[5] R. Doc. 46-7, ¶ 3.

the primary suspect in the underlying investigation.[6] Police arrested him after he exited the residence.[7]

Shorts claims that, during the course of his arrest, the defendants used excessive force, including brandishing assault rifles, slamming him onto vehicles, striking him in the head, and repeatedly spraying him with pepper spray to the point that he vomited and lost consciousness.[8] Specifically, Shorts claims that Detectives Quick, Kingsmill, Tabora, Pearse, Ibbitson, and Waguespack dragged him down the street and slammed him on an unmarked police vehicle.[9] He claims someone punched him in the back of the head and the right side of the face.[10] He claims that Detective Quick sprayed pepper spray in his face without need or provocation.[11] He further claims he was thrown into the police vehicle, causing his right side of his face to hit the floor and his head to hit something.[12] Shorts additionally claims that, after he was taken out of the vehicle, Detective Latour sprayed him with a hose.[13] He claims that, for about 15 to 20 minutes, he drifted in and out of consciousness while waiting for an ambulance and with a K-9 unit dog in his face.[14] Shorts claims that he had to undergo four eye surgeries and wears glasses as a result of the use of force.[15] As set

---

[6] *Id.*
[7] *Id.*
[8] R. Doc. 45 and R. Doc. 4 at 2, 5–6, 8, 13
[9] R. Doc. 18 at 3–4, 6, 20
[10] *Id.* at 4.
[11] *Id.* at 4, 6, 19–20.
[12] *Id.* at 4.
[13] *Id.* at 4, 6, 20.
[14] *Id.* at 4.
[15] *Id.* at 5.

forth below, the uncontroverted evidence does not support Shorts's allegations of excessive force.

## II.    Standard of Review

### A. Summary Judgment

Summary judgment is appropriate if a movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when its resolution might affect the case's outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *S. Ins. Co. v. Affiliated FM Ins. Co.*, 830 F.3d 337, 343 (5th Cir. 2016) (quoting *Anderson*, 477 U.S. at 248). Courts resolve factual controversies in favor of the nonmoving party. An actual controversy, however, exists only "when both parties have submitted evidence of contradictory facts." *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (quotation omitted). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Summary judgment is proper when "a party [ ] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to

any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. Once the moving party shows "that there is an absence of evidence to support the non-moving party's cause," the nonmoving party must come forward with "specific facts" showing a genuine factual issue for trial. *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002)(citing *Celotex*, 477 U.S. 317 at 325).

As noted, Shorts did not file a response to the motion for summary judgment. Shorts's "*pro se* status d[oes] not excuse him from following the local rules." *Thorn v. RaceTrac Petroleum, Inc.*, No. 21-30492, 2022 WL 965095, at *1 (5th Cir. Mar. 30, 2022) (per curiam) (citing *Hulsey v. Tex.*, 929 F.2d 168, 171 (5th Cir. 1991)). While the Court may not grant defendants' motion "simply because there is no opposition," *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985), the Court may "accept[ ] as undisputed the facts so listed in support of [the] motion for summary judgment." *Eversley v. MBank Dall.*, 843 F.2d 172, 174 (5th Cir. 1988); *accord White v. Coffield Med. Staff*, No. 21-40211, 2022 WL 1056103, at *2 (5th Cir. Apr. 8, 2022) (per curiam) ("Where, as here, a plaintiff does not file an opposition to a defendant's motion for summary judgment, a district court may properly take the facts put forward by defendant in support of his motion for summary judgment to be undisputed."); *see also* Fed. R. Civ. P. 56(e)(3) ("If a party ... fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... grant summary judgment if the motion and supporting materials-- including the facts considered undisputed--show that the movant is entitled to it").

**B. Section 1983**

Section 1983 authorizes claims against a person who, acting under color of state law, deprived the claimant of any rights secured by the Constitution and the laws of the United States. *See* 42 U.S.C. § 1983. The statute is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 n.3 (5th Cir. 1999). A plaintiff must satisfy three elements to establish § 1983 liability: (1) deprivation of a right secured by the Constitution or laws of the United States; (2) occurrence under color of state law; and (3) causation by a state actor. *Victoria W. v. Larpenter*, 369 F. 3d 475, 482 (5th Cir. 2004) (citation omitted).

**C. Qualified Immunity**

Defendants have urged qualified immunity as a basis for summary judgment. A state official sued in his personal capacity under § 1983 is entitled to qualified immunity from damages, which protects the official from liability for any act that was not objectively unreasonable at the time of the act. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (citing *Lincoln v. Turner*, 874 F.3d 833, 847 (5th Cir. 2017)).

Qualified immunity functions as an immunity from suit, rather than a mere defense to liability. *Pearson v. Callahan*, 555 U.S. 223, 237 (2009). Qualified immunity adjusts "the nature of the summary-judgment burden, how and when the burden shifts, and what it takes to satisfy the burden. *Tuttle v. Gallegos*, 180 F.4th 209, 217 (5th Cir. 2026) (quoting *Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020)). Given Defendants' good-faith invocation of qualified immunity, Shorts has the burden

of proof to show that the defense is unavailable. *Scott v. City of Mandeville*, 69 F.4th 249, 254–55 (5th Cir. 2023). To carry his burden to overcome defendants' qualified immunity defense here, Shorts "must show: (1) that the [defendants] violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Crandel v. Hall*, 75 F.4th 537, 543 (5th Cir. 2023) (internal citation and quotation marks omitted). He need not present "absolute proof" but must offer more than "mere allegations." *Tuttle*, 180 F.4th at 217–18 (citations omitted). These steps may be evaluated in any order and defendants are entitled to qualified immunity if Shorts fails to show either one. *Pearson*, 555 U.S. at 242; *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011).

## III.    Analysis

Defendants assert that the video evidence contradicts Shorts's claims that he was dragged down the street, picked up off the ground, slammed on a vehicle, and asked for an ambulance for 15 to 20 minutes while he drifted in and out of consciousness.[16] Detectives Ibbitson, Pearse, and Waguespack assert that they did not touch or come into physical contact with Shorts at any time.[17] Detectives Quick, Latour, Tabora, and Kingsmill assert that the force they utilized, if any, was reasonable and necessary under the circumstances and, even if a constitutional violation is found, they are nonetheless entitled to qualified immunity.[18]

---

[16] R. Doc. 46-1 at 9.
[17] *Id.* at 10, 19–20.
[18] R. Doc. 46-1 at 10–26.

**A. Detectives Pearse, Ibbitson, and Waguespack**

There is no evidence supporting Shorts's excessive force claims against Detectives Pearse, Ibbitson, and Waguespack. Rather, the undisputed evidence reflects that Detective Pearse, while present at the scene of Shorts's arrest for purposes of providing back-up assistance, did not have an active role in Shorts's arrest and did not physically touch Shorts at any time.[19] Detective Ibbitson was not involved in the execution of the warrant or the search and arrest of Shorts.[20] He did not arrive at the scene until after the pepper spray was deployed and did not touch or come into physical contact with Shorts.[21] Detective Waguespack was not present at the scene of Shorts's arrest and simply stood guard outside Shorts's hospital room while he underwent medical evaluation.[22] Thus, there is no basis for liability as to these defendants.

**B. Detectives Quick, Tabora, Kingsmill, & Latour**

Detective Quick asserts that his use of pepper spray, while Detective Tabora restrained Shorts, was necessary to force Shorts to spit out potentially lethal drugs and to gain his compliance.[23] Detective Kingsmill asserts that, after pepper spray was deployed, he merely gripped Shorts's jacket to prevent him from moving around.[24]

---

[19] R. Doc. 46-9 at 2, ¶¶ 11–13.
[20] R. Doc. 46-10 at 1, ¶¶ 4–5.
[21] *Id.* at ¶¶ 6–7.
[22] R. Doc. 46-11 at 1, ¶¶ 4–6.
[23] R. Doc. 46-1 at 16–17, 21–23.
[24] *Id.* at 19–20.

Detective Latour asserts that, after the deployment of pepper spray, he used a garden hose to flush the pepper spray from Shorts's eyes and face.[25]

Detective Tabora's body camera video depicts Tabora securing Shorts while Detective Quick searched him.[26] Quick and Tabora then accompany Shorts down the street towards a vehicle; they did not drag him or throw him onto a vehicle.[27] They notice Shorts's jaw moving as if he is chewing on illicit narcotics such as crack cocaine or fentanyl; they question him multiple times about the contents of his mouth.[28] When Shorts does not respond, Quick and Tabora move towards the vehicle and place Shorts's upper torso on the hood of the vehicle.[29] Quick verbally instructs Shorts at least twenty times to open his mouth while Shorts refuses and chews faster.[30] During this time, Quick attempts to open Shorts' mouth, but Shorts resists by refusing to open his mouth and by turning his head away.[31] Quick then delivers three flat open-hand blows to Shorts's head and shakes him, but Shorts continued to resist.[32] Ultimately, when Shorts continues to refuse to open is mouth, Quick requests and is given pepper spray and deploys two one-second bursts that strike Shorts's face.[33] Due to the effects of the pepper spray, Shorts opened his mouth and spit out two plastic

---

[25] *Id.* at 17–18.
[26] R. Doc. 47 at Exhibit 8; R. Doc. 46-5 at 2, ¶ 9, 14; R. Doc. 46-8 at 2, ¶ 9.
[27] *Id.*; R. Doc. 46-8 at 3, ¶ 3.
[28] *Id.*; R. Doc. 46-5 at 2, ¶ 9; R. Doc. 46-8 at 2, ¶ 9.
[29] *Id.*
[30] *Id.*; R. Doc. 46-5 at 2, ¶ 10; R. Doc. 46-8 at 2, ¶ 10.
[31] *Id.*; R. Doc. 46-5 at 2, ¶ 11; R. Doc. 46-8 at 2, ¶ 11.
[32] *Id.*; R. Doc. 46-5 at 2, ¶ 11; R. Doc. 46-8 at 2, ¶ 11.
[33] *Id.*; R. Doc. 46-5 at 2, ¶ 11; R. Doc. 46-8 at 2, ¶ 11.

baggies and 19 white rocks that later tested positive for cocaine.[34]

A second video depicts Detective Kingsmill arriving on scene after Quick's deployment of pepper spray and shows him place his hand on Shorts's jacket in an effort to assist Tabora in securing Shorts.[35] Thereafter, Tabora and Kingsmill escort Shorts and place him inside the vehicle.[36] Shorts did not hit his face or head when he was placed in the vehicle.[37] Approximately one minute later, Shorts is allowed to exit the vehicle and Detective Latour places a hand on Shorts's shoulder and, in compliance with his training, uses a hose to twice spray Shorts's face in an attempt to wash the pepper spray away.[38]

Emergency medical services arrived on the scene less than 15 minutes after the incident.[39] A leashed narcotics dog was at the scene, but remained a distance from Shorts.[40] At no time did Shorts lose consciousness; nor was the narcotics dog ever a threat to Shorts.[41] Additionally, no assault weapons appear to be present and no one ever draws a firearm.[42]

"When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan v. Cotton*, 572 U.S. 656 (2014). To prevail on an excessive-force claim, he must

---

[34] *Id.*; R. Doc. 46-5 at 2, ¶ 12; R. Doc. 46-8 at 2, ¶ 12.
[35] R. Doc. 47 at Exhibit 9; R. Doc. 46-6 at 2, ¶ 6–7.
[36] *Id.*; R. Doc. 46-6 at 2, ¶ 7.
[37] R. Doc. 47 at Exhibit 9.
[38] *Id.*; R. Doc. 46-7 at 2–3, ¶¶ 13–14.
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] R. Doc. 47 at Exhibit 8; *id.* at Exhibit 9.

show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (citations omitted). The reasonableness of an officer's conduct depends on the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The Court must adopt "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citation omitted).

Even where force is excessive, qualified immunity will apply "when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (citation and quotation omitted). Although Supreme Court precedent "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citation and quotation omitted). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (citation and quotation omitted).

The Court thus evaluates whether these uses of force were reasonable under the *Graham* factors. The first factor, severity of the crime, weighs against Shorts.

Shorts was a suspect in a narcotics investigation.[43] *Darden v. City of Fort Worth*, 880 F3d 722, 729 (5th Cir. 2018) (drug crimes are serious offenses (citation omitted)). Further, Shorts, a known convicted felon, was found to be in possession of two firearms at the time of his initial arrest and prior to being escorted down the street.[44] *See Peppar v. City of San Antonio*, No. 5:16-cv-158, 2019 WL 13537727, at *8 (W.D. Tex. Mar. 19, 2019) (explaining that the "severity of the crime *Graham* factor cuts in favor of the force not being excessive where the suspect had 'two outstanding warrants . . . both which are serious crimes.'").

The second factor, whether Shorts posed an immediate threat, is "generally the most important factor." *Baker v. Coburn*, 68 F.4th 240, 247–48 (5th Cir. 2023) (citing *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1167 (5th 2021)); *see also Malbrough v. Stelly*, 814 F. App'x 798, 803 (5th Cir. 2020) (noting the "second factor is the most important"). This factor also weighs against him. While Shorts did not physically threaten the officers, he was attempting to swallow dangerous illicit narcotics, which put himself at risk of significant harm. He refused to cooperate, ignored more than 20 verbal orders that he open his mouth, physically resisted despite Quick's attempts to get him to open his mouth, ignored warnings that his stomach would be pumped at the hospital,[45] and, finally, that pepper spray would be used if he continued to fail to comply with orders. *Ward v. Adkisson*, No. 1:24-cv-00481-PAB, 2026 WL 1017733,

---

[43] R. Doc. 46-5 at 1, ¶ 4; R. Doc. 46-7 at 1, ¶ 4; R. Doc. 46-7 at 1, ¶ 3; R. Doc. 46-8 at 1, ¶ 4;  R. Doc. 46-9 at 1, ¶ 4.
[44] R. Doc. 46-5 at 2, ¶ 6–8; R. Doc. 46-7 at 2, ¶ 5–7; R. Doc. 46-8 at 2, ¶ 6–8; R. Doc. 46-9 at 2, ¶ 6–8.
[45] R. Doc. 47 at Exhibit 8; R. Doc. 46-7 at 2, ¶ 11.

at *13 (N.D. Ohio April 15, 2026) (finding the presence of narcotics and plaintiff's attempt to ingest them posed a significant potential threat).

The third factor, whether Shorts was resisting or attempting to flee "largely folds into the second" as it implicates the same facts. *Salazar v. Molina*, 37 F.4th 278, 282 (5th Cir. 2022) (citation omitted). "'[A] suspect's refusal to comply with instructions' may indicate that physical force is justified ...." *Joseph ex rel. Est. of Joseph Bartlett*, 981 F.3d 319, 332 (5th Cir. 202) (citation omitted). Further, "[r]esisting while being handcuffed constitutes active resistance and justifies the use of at least some force." *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 480 (5th Cir. 2021). "To stay within constitutional bounds, an officer must use force with measured and ascending actions that correspond to a suspect's escalating verbal and physical resistance." *Joseph ex rel. Est. of Joseph Bartlett*, 981 F.3d at 332–33 (cleaned up).

Here, the actions of Detectives Tabora, Kingsmill, and Latour were reasonable. Tabora and Kingsmill simply used their hands to restrain Shorts while he was physically resisting. Minutes after the deployment of the pepper spray, Latour rendered aid to Shorts by using a hose to wash the pepper spray from Shorts's face. The Fifth Circuit has stated that pepper spray "'[d]econtamination consists primarily of flushing the eyes with water.'" *Hoke v. Anderson*, 799 F. App'x 224, 226 (5th Cir. 2020) (quoting *Wagner v. Bay City*, 227 F.3d 316, 319 n.1 (5th Cir. 2000)). Here, Latour explained to Shorts that the purpose of the water was to wash out the effects of the pepper spray. The water sprays were not high pressure and lasted a few seconds each. Additionally, Shorts was not held down, but rather he was allowed to

12

raise and lower his head and take a break in between sprays. *Wierzbic v. Howard*, 331 F.R.D. 32, 62–63 (S.D.N.Y. 2019) (finding use of garden hose to direct water into plaintiff's face and eyes to wash away pepper spray was reasonable under the circumstances), *aff'd*, 836 F. App'x 31 (2d Cir. 2020); *compare Glover v. Capt. Camacho*, 3:24-cv-1107-BJD-SJH, 2026 WL 2085188, at *6 (M.D. FL. July 20, 2026) (finding prisoner stated an excessive force claim where he alleged that officials directed a hose on top of his head and used hot water to flush from a hose to flush chemical agent into his eyes and face to cause him pain). Thus, Detectives Tabora, Kingsmill, and Latour are entitled to qualified immunity.

As to Detective Quick, his actions were also reasonable and commensurate to the urgent situation's need to prevent Shorts from harming himself. The evidence demonstrates that Quick utilized increasing degrees of force to prevent Shorts from ingesting the cocaine, including pinning him to the vehicle, attempting to open Shorts's mouth, giving three flat hand strikes to Shorts's head, shaking Shorts by the shoulders, and, finally, deploying two one second bursts of pepper spray. All the while, Shorts refused to comply with Quick's repeated verbal commands, ignored the threats that his stomach would be pumped and that Quick would utilize pepper spray, and continued to resist Quick's efforts. Under these circumstances, Quick's actions did not constitute an unconstitutional use of force. *Watson v. Dyersburg City Police Dep't.*, No. 08-2718-SHM-tmp, 2013 WL 5306683, at *37 (W.D. Tenn. Sept. 20, 2013) (concluding that the use of two bursts of pepper spray to make plaintiff spit out a baggie of marijuana was reasonable); *Love v. Rockford Ill. Mun. Police Dep't.*, No. 08-

50254, 2013 WL 159246, at *2 (N.D. Ill. Jan. 15, 2013) (concluding that strike to the mouth followed by several uses of taser on a low setting was not excessive where detainee refused to comply with commands to spit out drug packets, as failing to use force could have allowed the plaintiff to harm himself by swallowing the contraband), *appeal dismissed*, No. 13-1599 (7th Cir. Aug. 12, 2013); *Morris v. Tulsa Police Dep't.*, No. 09-CV-797-JHP-TLW, 2011 WL 1542920, at *4–6 (N.D. Okla. Apr. 21, 2011) (holding that the use of pepper spray followed by a taser was reasonable where plaintiff resisted attempted by officers to remove cocaine from his mouth); *Singleton v. City of Newburg*, 1 F.Supp.2d 306, 315 (S.D.N.Y. 1998) (concluding that use of pepper spray was reasonable where officer believed plaintiff was going to swallow contraband); *see Espinoza v. United States*, 278 F.2d 802, 803–04 (5th Cir. 1960) (concluding that "'no more force was used than was necessary under the circumstances'" where officers grabbed defendant by throat, choked him, and attempted to pry open his mouth to prevent him from swallowing a package of drugs (citation omitted)); *Thomas v Cagel*, No. 4:21-CV-692-P, 2022 WL 17586547, at *6–7 (N.D. Tex. Oct. 17, 2022) (holding that the use of pepper spray was justified to stop arrestee's self-harming behavior with officer's requests was reasonable when arrestee banged his head on cage of police car and ignored commands to stop as well as an instruction that pepper spray would be deployed if he did not stop his behavior). As such, Detective Quick is also entitled to qualified immunity.

## IV.    Conclusion

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment, R. Doc. 46, is **GRANTED**.

**IT IS FURTHER ORDERED** that Shorts's individual-capacity claims of excessive force against defendants Detective Paul Quick, Detective Harold Kingsmill, Detective Kenneth Latour, Detective Allan Tabora, Detective Barrett Pearse, Detective Philip Ibbitson, and Detective Christopher Waguespack are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 10th day of August, 2026.


_____
EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE

15